UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KRIS R. FINKBEINER,
    *Plaintiff*,
v.                                      CASE NO. 13-CV-13906

COMMISSIONER OF             DISTRICT JUDGE MARIANNE O. BATTANI
SOCIAL SECURITY,              MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**[1]

**I.    RECOMMENDATION**

This Court **RECOMMENDS** that this case be remanded pursuant to sentence six of 42 U.S.C. § 405(g), that Plaintiff's Motion for Summary Judgment (docket 17) be granted, and that Defendant's Motion for Summary Judgment (doc. 20) be denied.

**II.    REPORT**

    **A.    Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability and disability insurance benefits (DIB), and supplemental security income benefits (SSI). The matter is currently before this Court on cross-motions for summary judgment.[2] (Docs. 17, 20.)

---

[1] The format and style of this Report and Recommendation comply with the requirements of Fed. R. Civ. P. 5.2(c)(2)(B). This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

[2] The Court has reviewed the pleadings and dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

Plaintiff filed an application for a period of disability, DIB and SSI on October 26, 2009, alleging that he became unable to work on December 30, 2008. (Transcript, Doc. 12 at 191-200.) Plaintiff's initial applications were denied. (Tr. 73-98.) On March 22, 2012, Plaintiff appeared at a video hearing before Administrative Law Judge (ALJ) Joseph L. Brinkley, who considered the Plaintiff's claims *de novo*. (Tr. 34, 47.) In a decision dated March 30, 2012, the ALJ found that Plaintiff was not under a disability within the meaning of the Social Security Act at any time from December 30, 2008, through the date of the decision. (Tr. 42.) Plaintiff requested Appeals Council review of this decision. (Tr. 30.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on July 23, 2013, when the Appeals Council denied Plaintiff's request for review. (Tr. 1-6.) On September 12, 2013, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

### B. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether her findings are supported by substantial evidence and whether she employed the proper legal standards. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is "more than a scintilla . . . but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)(quoting *Cutlip v. Sec'y Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not

the function of this Court to try cases *de novo*, resolve conflicts in the evidence or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports another conclusion. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994)(citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)(en banc)(citations omitted)).

"Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006)("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party")(citations omitted); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

**C.     Governing Law**

Disability for purposes of DIB and SSI is defined as the:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a)(DIB), 416.905(a)(SSI).

Plaintiff's Social Security disability determination is to be made through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007).

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his]

4

past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003)(cited with approval in *Cruse v. Comm'r of Soc. Sec.,* 502 F.3d 532, 540 (6th Cir. 2007)); *see also Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994)("[c]laimant bears the burden of proving his entitlement to benefits."). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *See Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. § 416.920(a)(4)(v), (g)); *see also* 20 C.F.R. § 404.1520(a)(4)(v), (g).

### D.   ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff met the insured status requirements through December 31, 2010, and had not engaged in substantial gainful activity since December 30, 2008, the alleged onset date. (Tr. 36.) At step two, the ALJ found that Plaintiff's mood disorder, substance abuse, hepatitis C and degenerative disc disease were "severe" within the meaning of the second sequential step. (Tr. 36.) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. 36-38.) The ALJ found that Plaintiff had the residual functional capacity (RFC) to perform light work as defined in the Regulations[3] with the

---

[3]Light work is defined as:
[L]ifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. §§ 404.1567(b), 416.967(b).

5

following additional limitations: "[Claimant] is limited to 1-2 step, routine, simple, repetitive tasks; and can have no more than superficial contact with the public (no more than 1/3 of an eight-hour day)." (Tr. 38.) At step four, the ALJ found that Plaintiff was unable to perform his past relevant work as a construction laborer (Dictionary of Occupational Titles (DOT) code 869.687-010, SVP 2, heavy exertion), fast food worker (DOT code 311.472-010, SVP 2, light exertion), or forklift driver (DOT code 921.683-010, SVP 3, medium exertion). (Tr. 40.) At step five, the ALJ found that Plaintiff could perform jobs existing in significant numbers in the national economy and therefore he was not suffering from a disability under the Social Security Act at any time from December 30, 2008. (Tr. 41-42.)

     E.    **Administrative Record**

Plaintiff was 42 years old at the time of the hearing. He is a high school graduate. He was five foot six inches tall and weighed 180 pounds at the time of the hearing. (Tr. 55.) He does not have a driver's license because it was revoked for drunk driving. (Tr. 56.) Plaintiff was incarcerated at the time of the hearing. (Tr. 54-55.) Plaintiff testified that he believes he cannot work due to his anxiety and depression. (Tr. 56.) He testified that he was diagnosed with anxiety near the end of 2008 or beginning of 2009. (Tr. 56-57.) He explained that at that time he was hospitalized for suicidal thoughts and depression and a suicide attempt when he took sleeping pills and drank alcohol. (Tr. 57.)

Plaintiff testified that five out of seven days a week he does not feel like feeding himself or showering and he would sleep for days. (Tr 58.) He testified that he also believes his Hepatitis C makes him tired. (*Id.*) Plaintiff testified that he has alcoholism, too, and a doctor told him that he is self-medicating. (Tr. 59.) Plaintiff explained that he can only concentrate for "maybe a minute." (*Id.*) He also has a feeling like his skin is crawling, which happens about four out of

6

seven days a week, but it does not last all day. (Tr. 60.) He explained that if he is in a group of more than ten or twelve people, that feeling may not go away. (Tr. 61.)

The ALJ asked if Plaintiff was on any medication and Plaintiff testified to the following: "I was for the longest time, and then they stopped it. The Department of Corrections stopped a lot of the medications here due to the budget and whatnot." (Tr. 61.) Upon further questioning from the ALJ, Plaintiff explained that the medications "kind of stopped" once he left the quarantined area at the prison, but he does not know why. (Tr. 61.) He testified that he had been on Lexapro, Abilify and, for a while, Seroquel, and that the Abilify and Lexapro seemed to help his anxiety. (*Id.*) He explained that the Seroquel made him nauseous and sleepy, but the other medications only caused dry mouth. (Tr. 61-62.)

Plaintiff testified that in prison he is able to dress and bathe himself, and he keeps himself on schedule. (Tr. 62.) He has a job detail working in the kitchen and he attends Narcotics Anonymous and a substance course. (*Id*.) He agreed that these things take up most of his time, approximately eight hours a day. (*Id.*) He also watches television and does crossword puzzles. (*Id*.) He testified that at the time of the hearing he had been in prison for thirteen months and had four months left for an unarmed robbery conviction. (Tr. 63.)

A vocational expert (VE) testified at the hearing. The ALJ asked the VE to consider an individual similar to Plaintiff's age, education and work experience with the ability to perform light exertion work, further limited to "one to two step routine simple repetitive type tasks. He is also restricted to superficial contact with the public. He could have such contact no more than one per an eight hour work day, . . ." (Tr. 66.) The VE testified that such an individual could not perform any of Plaintiff's past work, yet there would be light unskilled jobs that such an individual could perform, including: a cleaner or housekeeper (DOT representative code 323.687-014, SVP

7

2) with 3,000 positions in the region and 40,000 nationally; a kitchen helper (DOT code 318.687-010, SVP 2) with 5,000 positions in the region and 80,000 nationally; and a packager (DOT code 989.587-018, SVP 2) with 4,000 in the region and 100,000 nationally. (Tr. 67.)

The ALJ then asked the VE to consider the same individual as the first hypothetical, with the addition that the individual "would not need to work around supervisors, co-workers, or the public, and he would need a low stress job." (Tr. 68.) The VE testified that there would be no jobs available. (Tr. 68.)

**F.     Analysis**

**1.     Whether The ALJ Fully Developed The Record And Whether Plaintiff Knowingly Waived His Right To Counsel**

Plaintiff argues that the ALJ failed to fully develop the record when Plaintiff waived his right to counsel. Pursuant to the Regulations, Plaintiff had the right to appoint an attorney or non-attorney representative to represent him in his dealings with the Social Security Administration. *See* 20 C.F.R. §§ 404.1700, .1703, .1705. Plaintiff also had the right to choose to proceed without a representative.

Pursuant to 42 U.S.C. 406(c),

> The Commissioner of Social Security shall notify each claimant in writing, together with the notice to such claimant of an adverse determination, of the options for obtaining attorneys to represent individuals in presenting their cases before the Commissioner of Social Security. Such notification shall also advise the claimant of the availability to qualifying claimants of legal services organizations which provide legal services free of charge. 42 U.S.C. 406(c).

With the initial denial of his application, Plaintiff received notice of his right to be represented. (Tr. 102, 106.) The Request for Hearing shows that Plaintiff acknowledged his right to be represented. (Tr. 107-08.) In September 2010, Plaintiff appointed an attorney to represent him at a hearing initially scheduled for February 9, 2011. (Tr. 109-11, 112-17, 281.) Plaintiff was jailed

8

prior to the February 2011 hearing date, was sentenced to prison for robbery on June 15, 2011, and his attorney withdrew from his case. (Tr. 151-52, 219.)

Plaintiff was sent a new Notice of Hearing dated January 11, 2012, for a hearing date of March 22, 2012. (Tr. 175-83.) Plaintiff was again provided written notice of his right to representation, consisting of two pages with a block caption stating, "Your Right To Representation." (Tr. 182-83.) Plaintiff acknowledged receiving the Notice of Hearing by returning the "Acknowledgement of Receipt (Notice of Hearing)" and indicated that he was still incarcerated. (Tr. 188.)

At the March 22, 2012 hearing, Plaintiff was notified on the record that he had the right to representation and Plaintiff explained that he "would have liked representation" but he has never heard back from the representative he contacted, and he wished to "go on with the hearing." (Tr. 49-50.) I suggest that the Record shows that the Agency and the ALJ complied with the regulations and the requirements to notify Plaintiff of his right to counsel. The record also shows that Plaintiff knowingly waived this right and clearly elected to proceed with the hearing.

As set forth in detail, below, this case is recommended for remand for the consideration of new and material evidence, yet it is worth noting that in this instance there was not a failure to fully and fairly develop the record. Plaintiff argues that forms submitted by Plaintiff and received by the hearing office on December 28, 2011, should have alerted the ALJ that Plaintiff's record was not up-to-date. (Doc. 17 at 12.) Despite Plaintiff's arguments to the contrary, neither Claimant's Medication and Recent Medical Treatment forms nor Plaintiff's testimony, put the ALJ and his staff on notice that there were additional medical records outstanding. The medications which Plaintiff argues were listed on his "Claimant's Medication" form, received by the hearing center on December 28, 2011, showed that those medications were first prescribed in 2009 and

9

Plaintiff testified at the hearing that they stopped giving him those medications after he was incarcerated. (Tr. 285-288.) There was no reason for the ALJ to believe that this was new information for which he did not have records. Similarly, the "Recent Medical Treatment" form received by the hearing center on December 28, 2011, did not give any indication that the file was missing medical evidence. The form listed "Ingram" as the doctor in "Bay City," with no dates of treatment. In response to the question "What have these doctors told you about your condition?" Plaintiff wrote "Bipolar depression." (Tr. 285.) The record contained Dr. Ingram's records from as recently as June 2010. (Tr. 525.)

Plaintiff argues that the ALJ failed to obtain records for or inquire regarding Plaintiff's testimony that he was treated for anxiety in 2008 and 2009 at Bay Medical Center. (Doc. 17 at 12.) Yet the record before the ALJ contained the 2008 admission records for Bay Regional Medical Center. (Tr. 300-27.) This date coincides with the "one time occurrence" to which Plaintiff testified at the hearing. (Tr. 56-57.) There was nothing to indicate to the ALJ or the hearing office staff that the record needed further development.

Plaintiff relies on 20 C.F.R. 404.944 for the premise that the ALJ "may stop the hearing temporarily and continue it at a later date if he or she believes that there is material evidence missing at the hearing." 20 C.F.R. § 404.944.  Plaintiff also argues that the ALJ had the duty to develop the record pursuant to 20 C.F.R. § 404.1512(d), which provides that

> Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application unless there is a reason to believe that development of an earlier period is necessary or unless you say that your disability began less than 12 months before you filed your application. We will make every reasonable effort to help you get medical reports from your own medical sources when you give us permission to request the reports. 20 C.F.R. § 404.1512(d).

10

Indeed, the record was developed for more than the twelve month period prior to Plaintiff's October 26, 2009 application. It contained medical evidence from February 2007 through June 2010. (Tr. 293-529.) Despite the duty to ensure a fair and full administrative record, Plaintiff retains a responsibility to submit evidence to establish disability. *See* 20 C.F.R. § 404.1512(c).

Plaintiff appears to argue that being incarcerated was a disability that made him incompetent to represent himself and argues that the ALJ should have requested his updated medical information from the Michigan Department of Corrections. (Doc. 17 at 8.) Plaintiff provides no authority for suggesting that the ALJ has a heightened duty to develop the record for an incarcerated individual beyond what is required to fully and fairly develop the record for an unrepresented claimant. The Sixth Circuit has held that

> When a disability claimant is not represented by counsel at the administrative hearing, the ALJ has a special duty to ensure that a full and fair administrative record is developed. However, even though we scrutinize with care the administrative record when a claimant appears without counsel, the mere fact that a claimant was unrepresented is not grounds for reversal. Rather, we examine each case on its own merits to determine whether the ALJ failed to fully develop the record and therefore denied the claimant a full and fair hearing. *Duncan v. Sec'y of Health and Human Servs.*, 801 F.2d 847, 856 (6th Cir. 1986)(internal citations omitted)(citing *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051 (6th Cir.1983); *Holden v. Califano*, 641 F.2d 405, 408 (6th Cir.1981)).

Plaintiff argues that the ALJ should have made specific inquiries, for example regarding his last date of treatment prior to incarceration, and whether he received any psychiatric treatment while incarcerated. (Doc. 17 at 11.) Plaintiff argues that "[a]t the hearing, the ALJ did not inquire of the Plaintiff whether there were any other conditions that had not been discussed." (Doc. 17 at 15.) As set forth above, Plaintiff gave the ALJ no indication that there were additional medical records outstanding or conditions or limitations that were not discussed at the hearing.

At the hearing, the ALJ asked Plaintiff, "Do you have any other evidence, or items you want me to look at?" Plaintiff responded, "No, Your Honor. That seems to cover it all." (Tr. 52.) The ALJ further went on to ask, "Okay. All right. So since you have been incarcerated you don't – you haven't developed any medical records, or anything as of yet, is that your testimony?" Plaintiff responded, "Okay." (Tr. 52.) At the end of the hearing the ALJ said, "Okay. All right. Is there anything that you think should be asked of you that I haven't asked that would be helpful in helping me to see the disabling impact of your impairments upon you?" Plaintiff responded, "You – you seemed to have covered it very well." (Tr. 63.)

For these reasons, I suggest that the record shows that the ALJ fully and fairly developed the record at the hearing and had no notice that Plaintiff had additional medical evidence to be obtained.

## 2. Whether The Case Should Be Remanded Pursuant To Sentence Six of 42 U.S.C. § 405(g)

Plaintiff requests a remand for the consideration of additional evidence that he alleges is both new and material pursuant to sentence six of 42 U.S.C. § 405(g). The "court is confined to review evidence that was available to the Secretary, and to determine whether the decision of the Secretary is supported by substantial evidence." *Wyatt v. Sec'y of Health and Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992) (*citing Richardson*, 402 U.S. at 401). The court may still remand the case to the ALJ to consider this additional evidence but only upon a showing that the evidence is new and material and "that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). This is referred to as a "sentence six remand" under 42 U.S.C. § 405(g). *See Delgado v. Comm'r of Soc. Sec.*, 30 Fed. Appx. 542, 549 (6th Cir. 2002). The party seeking remand has the

12

burden of showing that it is warranted. *See Sizemore v. Sec'y of Health and Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). "In order for the claimant to satisfy this burden of proof as to materiality, he must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Id.* (*citing Carroll v. Califano*, 619 F.2d 1157, 1162 (6th Cir. 1980)); *see also Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993) ("Where a party presents new evidence on appeal, this court can remand for further consideration of the evidence only where *the party seeking remand* shows that the new evidence is material.")(emphasis added)(citations omitted).

The exhibits that were before the ALJ are identified as Exhibits 1F through 12F. Plaintiff requests a remand for consideration of documents that are identified in the Appeals Council decision as exhibits 13F through 17F. Plaintiff argues that he did not submit the additional evidence because he was incarcerated and his attorney withdrew from the case. Plaintiff cites no authority showing that such routine reasons meet the "good cause" requirement.

The "Acknowledgement of Receipt (Notice of Hearing)," however, supports Plaintiff's good cause argument for the failure to provide these additional medical records in a timely fashion prior to the hearing. (Tr. 188.) On the "Acknowledgement of Receipt (Notice of Hearing)" form, Plaintiff selected a check box that indicated "I cannot be present at the time and place shown on the Notice of Hearing. I request that you reschedule my hearing because" and then he hand wrote "Im (sic) in prison till 8-11-12." (Tr. 188.) He then gave his prisoner ID number, new address, and asked the Agency to "please send me some info on what I may do before my release date address below . . . ." (*Id.*) On March 8, 2012, Plaintiff was sent a "Notice of Hearing– Important Reminder" with the same hearing date of March 22, 2012, indicating that the date of hearing had not been changed as requested by Plaintiff. (Tr. 190.)

The hearing went forth via video conference on March 22, 2012. At the hearing, Plaintiff indicated that he did not know about the hearing until the day of the hearing. The following exchange took place between Plaintiff and the ALJ at the hearing:

> A [Plaintiff] Yeah. It is just like I said I didn't plan on this. They just came down and got me actually at 1:00. So I had paperwork and stuff I didn't even get to bring or whatnot. So today was unexpected.
>
> Q [ALJ] Well, you knew we were having this hearing today didn't you?
>
> A [Plaintiff] No. I did not, Your Honor. At 1:00 they came and got me, and then I came in here and waited for the phone call, and since 1:00 I have been here. (Tr. 63.)

Plaintiff's testimony indicates that he was unprepared for the hearing that went forth on March 22, 2012. In this instance, where Plaintiff believed he had adjourned his hearing and indicated surprise when it went forth, I suggest that his failure to know about the hearing date provides good cause for his failure to timely submit information regarding additional medical evidence, as well as his failure to submit whatever "paperwork and stuff" he testified that he did not get to bring to the "unexpected" hearing. (Tr. 63.)

Defendant argues that the evidence is not new because it was in existence at the time of the ALJ's decision. Additional evidence is new if it was not in existence or available to the claimant at the time of the administrative proceeding. *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990). A review of the exhibits for the sole purpose of determining whether they are new and material shows that some of the evidence is dated prior to the date of the ALJ's decision and relates "to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R.§ 404.970(b). Several of the records post-date the ALJ's hearing and decision and were not available prior to the ALJ's hearing and subsequent decision. In this instance, due to Plaintiff being unaware

14

of the hearing date and believing he had adjourned his hearing until his release, I suggest that the evidence was in effect unavailable to him at the time of the March 2012 hearing.

Plaintiff argues that the records relating to a psychiatric hospitalization in December 2010, as well as a 2011 shoulder injury and ongoing psychiatric treatment after Plaintiff's discharge are relevant. I suggest that the psychiatric-related records from prior to the ALJ's hearing are material. These include Exhibit 13 and a portion of Exhibit 16F (Tr. 532-37, 566-68.) The ALJ had identified Plaintiff's mood disorder as a severe impairment, noted that he took medication for the same and included mental limitations in the RFC. (Tr. 36, 38, 39.) However, the mental health-related records post-dating the ALJ's hearing are not material to the relevant time period, since "evidence of a subsequent deterioration or change in condition after the administrative hearing is deemed immaterial." *Wyatt*, 974 F.2d at 685 (citing *Sizemore*, 865 F.2d at 712).

The shoulder injury records proffered by Plaintiff are also material because the ALJ's RFC does not contain limitations related to this injury and does not otherwise discuss it in the decision.[4] The records related to Plaintiff's shoulder injury should be considered on remand, including any evidence of treatment and surgery following the date of the ALJ's decision, which establish the extent and duration of Plaintiff's initial injury. These are identified as Exhibits 14F- 15F, and portions of Exhibit 16F and 17F relating to shoulder pain and medication. (Tr. 540-59, 562, 569-

---

[4] Plaintiff admits that "[i]t can be inferred that Plaintiff's incarceration began on the date of his shoulder injury since the emergency records indicate he injured his shoulder 'fleeing from police' after shoplifting and since he arrived at the hospital in handcuffs." (Doc. 17 at 17; tr. 540.) Should this case be remanded for consideration of the additional evidence, and should it be determined that the total medical evidence indicates that Plaintiff is disabled, then Plaintiff's impairments must be evaluated pursuant to Social Security Ruling 83-21: Title II: Person Convicted of a Felony, as to whether the impairments have arisen as follows:

> "[I]n connection with" the commission of a felony after October 19, 1980 for which the individual is convicted, or if a pre-existing impairment(s) was aggravated "in connection with" the commission of the felony after October 19, 1980, consideration of the felony-related impairment(s) and resulting functional limitations in the evaluation of disability will be excluded. The exclusion applies for the life of the individual. SSR 83-21.

80, 597-618.) Accordingly, this case should be remanded pursuant to sentence six of 42 U.S.C. § 405(g) for consideration of new and material evidence as set forth herein.

### 3. Whether The ALJ Erred In Failing To Discuss The Third-Party Report

Plaintiff's father completed an Adult Function Report dated November 21, 2009. (Tr. 254-61.) Plaintiff alleges that if the ALJ had placed "any weight" on this report, "a finding of disabled would have been indicated." (Doc. 17 at 26.) Contrary to Plaintiff's argument that the ALJ "failed to note or discuss the statements from Plaintiff's father," the ALJ not only considered Plaintiff's father's Third Party Function Report, he directly cited it in considering Plaintiff's activities of daily living, noting that Plaintiff's "father also noted the claimant does not driver (sic) or cook but identified no problems with personal care." (Doc. 17 at 26; tr. 37, 255.) In considering Plaintiff's difficulties with concentration, persistence or pace, the ALJ again cited directly from Plaintiff's father's third-party report, stating "his father reported memory problems and inability to follow instructions." (Tr. 37.)

Plaintiff argues that "[p]erceptible weight must be given to the testimony of lay witnesses where it is consistent with medical evidence" citing *Lashley v. Sec'y of Health and Human Servs.*, 708 F.2d 1048, 1054 (6th Cir. 1983) and *Lohr v. Comm'r of Soc. Sec.*, 559 F.Supp.2d 784 (E.D.Mich. 2008). *Lohr* is distinguishable in that the two letters that were not considered in *Lohr* were "opinion letters" from individuals "who have seen the individual in their professional capacity." *Id.* at 792. Second, in *Lohr*, the ALJ's decision omitted any reference to these supervisors' opinion letters. *Id.* Social Security Ruling (SSR) 06-03p addresses opinions and other evidence from sources who are not "acceptable medical sources." SSR 06-03p. Pursuant to SSR 06-03p, Plaintiff's father's evidence is considered "*evidence* from 'non-medical sources' who have not seen the individual in a professional capacity in connection with their impairments, such as

spouses, parents, friends, and neighbors," and while this evidence must be considered with all the evidence of record, SSR 06-03p does not identify this "evidence" as an "opinion" that requires an explanation of the weight given it. *See* SSR 06-03p (emphasis added)("the case record should reflect the consideration of opinions from medical sources who are not 'acceptable medical sources' and from 'non-medical sources' who have seen the claimant in their professional capacity.' . . . The adjudicator generally should explain the weight given to opinions from these 'other sources,'" . . . .). *Lashley* is distinguishable in that it holds that "perceptible weight must be given to lay testimony where, as here, it is *fully supported by the reports of the treating physicians*." *Lashley,* 708 F.2d at 1054. In *Lashley,* four different physicians "concluded that [the Lashley was totally and permanently disabled." *Id.* at 2054.

The ALJ's decision clearly shows that he both considered and cited Plaintiff's father's evidence in finding that Plaintiff had limitations in activities of daily living and maintaining concentration, persistence and pace. I note, however, that this evidence may be subject to additional consideration in light of new and material evidence.

**4.  Whether The ALJ Properly Considered Plaintiff's GAF Scores And Allegations Of Borderline Intellectual Functioning**

Plaintiff claims that the ALJ's decision failed to comply with 20 C.F.R. § 404.1527(c) where the ALJ did not give two treating physicians' opinions controlling weight. (Doc. 17 at 19.) Plaintiff also argues that the ALJ failed to include borderline intellectual functioning, cognitive impairment and an IQ of 70 in Plaintiff's RFC. Because I suggest that this case should be remanded for consideration of new and material evidence, including evidence related to Plaintiff's mental impairments during the relevant period, further consideration of the ALJ's weighing of the doctor's opinions and the severe conditions is premature.

### G. Conclusion

Defendant's Motion for Summary Judgment (doc. 20) should be denied and that of Plaintiff (doc. 17) granted and the ALJ's decision should be remanded pursuant to sentence six of 42 U.S.C. § 405(g) for further proceedings and consideration of new and material evidence as set forth herein.

### III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006)(*citing Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987)). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. E.D. Mich. LR 72.1(d)(3). The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                                    s/ 𝕮𝖍𝖆𝖗𝖑𝖊𝖘 𝕰 𝕭𝖎𝖓𝖉𝖊𝖗
                                                 CHARLES E. BINDER
Dated: January 5, 2015                     United States Magistrate Judge